UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MISSOURI DEPARTMENT<br>OF SOCIAL SERVICES<br>221 West High Street<br>Jefferson City, Missouri 65101<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT<br>OF HEALTH AND HUMAN SERVICES<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>    and<br><br>ROBERT F. KENNEDY, JR.<br>Secretary of the United States Department<br>of Health and Human Services, in his official capacity,<br>200 Independence Avenue, SW<br>Washington, DC 20201,<br><br>        Defendants. | Case No. 1:25-cv-3937 |

**COMPLAINT**

**INTRODUCTION**

1.    The Missouri Department of Social Services (DSS, "Missouri," or "the State"), seeks review of a final administrative decision by the United States Department of Health and Human Services (HHS) Departmental Appeals Board disallowing $23,977,840 in federal funding claimed by Missouri for pharmacy dispensing fees paid in State Fiscal Years (SFYs) 2011, 2012, 2013, and 2014 in Missouri's Medicaid program and the Children's Health Insurance Program

1

(CHIP). The disallowance was taken by the Centers for Medicare & Medicaid Services (CMS), which is the constituent agency within HHS tasked with oversight of the Medicaid program.

2. This case involves CMS's disallowance of federal funding in dispensing fees paid by the Missouri Medicaid program to pharmacists who dispensed outpatient prescription drugs to Missouri Medicaid beneficiaries. The basis of the disallowance is that the fees paid by DSS were not in accordance with its approved state Medicaid plan. But all that the state plan provided is that DSS would pay pharmacists a "professional dispensing fee," which was defined as the "applicable fee at the time the prescription is being filled." The plan did not provide any detail as to what fee would be "applicable," specify how it would be determined, or identify where it would be published.

3. For decades, the State consistently interpreted the "applicable fee" to be the fee set by the agency, which was then included in and approved through DSS's annual budget requests to the Missouri General Assembly.

4. CMS concluded that the State had paid in excess of the "applicable fee" because the amount paid exceeded an amount ($4.09) that had been agreed to by DSS in a 1991 Settlement Agreement resolving litigation between DSS and the Missouri Pharmaceutical Association and several individual pharmacies. Neither the $4.09 figure nor the Settlement Agreement was referred to in the state plan, and the Settlement Agreement expressly recognized that "[n]otwithstanding this settlement, the State remains free to take whatever actions are authorized or required by applicable law," including additional fee increases.

5. The dispensing fees at issue were paid from July 1, 2010, through June 30, 2014. CMS did not take a disallowance until 2021.

2

6. The HHS Departmental Appeals Board ("the Board") upheld the disallowance even though its precedent requires it to defer to a State's reasonable and consistent interpretation of its state plan, and nothing in the state plan required the State to adhere to the 1991 Settlement Agreement as the "applicable fee." The Board also rejected the State's argument that CMS's action in taking the disallowance was untimely. A copy of the Board's decision is attached as Exhibit 1.

7. Both aspects of the Board's decision are arbitrary, capricious, an abuse of discretion, and not in accordance with either the text or the purpose of the Medicaid statute. The Court should set aside the Board's decision and the underlying disallowance. 5 U.S.C. § 706.

## JURISDICTION AND VENUE

8. This action arises under Section 1116 of the Social Security Act, 42 U.S.C. § 1316(e)(2)(C), and the Administrative Procedure Act, 5 U.S.C. § 704. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

9. Venue is proper under 28 U.S.C. § 1319(e)(1) and 42 U.S.C. § 1316(e)(2)(C).

## PARTIES

10. Plaintiff Missouri Department of Social Services is the "single State agency" responsible for administration of the State of Missouri's Medicaid program. *See* 42 U.S.C. § 1396a(a)(5).

11. Defendant United States Department of Health and Human Services, through its constituent agency the Centers for Medicare & Medicaid Services, is the federal agency responsible for oversight of the Medicaid program.

12. Defendant Robert F. Kennedy, Jr. is the Secretary of HHS and is responsible for the overall administration of the agency. He is sued in his official capacity.

13. The HHS Departmental Appeals Board acts for the Secretary in disputes involving Medicaid and CHIP disallowances. *See* 42 U.S.C. § 1316(e)(2)(A).

## BACKGROUND

### The Medicaid Program and the Single Audit Act

14. Medicaid is a cooperative federal-state program in which the federal government provides financial assistance to participating States in connection with the provision of health care services to lower-income individuals and families, referred to as "medical assistance."

15. Under the Medicaid statute, participating States are entitled to federal reimbursement for a percentage of their expenditures on medical assistance made pursuant to a "state plan" approved by HHS through its constituent agency, CMS. *See id*. §§ 1396a, 1396b. The federal government's share of a State's expenditures under the Medicaid program is called "federal financial participation" (FFP). 42 C.F.R. § 400.203; 45 C.F.R. § 95.4.

16. Pursuant to the federal Single Audit Act of 1996, 31 U.S.C. §§ 3502 *et seq.*, DSS's operations in administering the Medicaid program are subject to annual review by the Missouri State Auditor's Office. That Act requires the state auditor to annually review whether the State "has complied with the provisions of laws, regulations, and contracts or grants pertaining to Federal awards." 31 U.S.C. §§ 7502(b), (e)(4).

17. HHS is the "cognizant agency for audit" with respect to programs that are primarily funded by HHS. As the cognizant agency for audit purposes, HHS is charged with reviewing and acting on the single state audits.

18. OMB Circular A-133—which governed audits under the Single Audit Act until December 26, 2013—provided that a federal agency "shall" "[i]ssue a management decision on

audit findings within six months after receipt of the audit report and ensure that the recipient takes appropriate and timely corrective action." OMB Circular A-133, Subpart D.

19. Upon codification at 2 C.F.R. Part 200, effective December 27, 2013, the rules governing single state audits provide that the federal agency responsible for issuing a management decision "must do so" within six months of acceptance of the audit report by the federal audit clearinghouse. 2 C.F.R. § 200.521(d).

## Missouri Medicaid's Pharmacy Dispensing Fees

20. Missouri's Medicaid state plan provides that the reimbursement for outpatient prescription drugs consists of two components: (1) ingredient costs, and (2) a professional dispensing fee. From at least 1980 until amended on February 1, 2021, Missouri's state plan defined the professional dispensing fee as the "applicable fee at the time the prescription is being filled." This language was repeatedly approved by CMS through several state plan amendment approvals, without inquiry as to how the State was establishing the "applicable fee," or any directive from CMS as to how the "applicable fee" must be memorialized.

21. The Missouri HealthNet Division of DSS adjusted the dispensing fee numerous times over a nearly twenty-year period, increasing from $3.00 per prescription in 1988 to a base fee of $4.82 in 2007, plus various modifications and enhancements. Each fee increase was included in and approved through DSS's annual budget requests to the Missouri General Assembly, but it was not specified in the state plan.

22. In 1991, as part of a court-approved settlement resolving litigation against DSS brought by the Missouri Pharmaceutical Association and several individual pharmacies, DSS increased the base dispensing fee to $4.09. A copy of the Settlement Agreement is attached as Exhibit 2. The Settlement Agreement expressly stated that "[n]otwithstanding this settlement, the

State remains free to take whatever actions are authorized or required by applicable law." Among other things, the Agreement contemplated that the State would consider an additional increase to the dispensing fee in 1993, although such an increase was not "guaranteed." DSS did not amend its state plan or its regulations to reflect the $4.09 fee.

23.     DSS did not increase the base dispensing fee until 2007, when it increased it from $4.09 to $4.84 per prescription. As with previous adjustments to the dispensing fee, DSS did not amend its state plan or its regulation to reflect this increase.

### Missouri State Audits

24.     In March 2012, the State Auditor released its SFY 2011 single state audit, in which for the first time, it questioned $6,909,934 in federal Medicaid funding to the extent the $4.84 base dispensing fee adopted in 2007 exceeded the amount set forth in the 1991 Settlement Agreement and state regulation. The State Auditor "recommend[ed]" that DSS "resolve questioned costs with the grantor agency." DSS responded that it believed its payments were in accordance with the "applicable fee" language in its approved state plan.

25.     The State Auditor made similar findings, and DSS made a similar response, with respect to the SFY 2012 and SFY 2013 audits.

26.     Although it had not heard from CMS, DSS amended its state regulation to reflect the $4.84 base dispensing fee, effective March 30, 2014.

27.     In September 2014, nearly two and a half years after the SFY 2011 audit was released, CMS sent a "demand" letter to DSS requesting that DSS return a total of $19,332,077 in costs that the State Auditor questioned in the audit reports for SFYs 2011, 2012, and 2013. The demand letter took the position that the questioned fees were not allowable because "dispensing

6

fees paid in excess of the amount authorized in state regulations were not authorized and therefore not allowable."

28. The demand letter was outside the six-month timeframe required for management decisions on the recommendations set forth in the SFY 2011 and SFY 2012 state audits.

29. Had CMS timely acted on the SFY 2011 audit, DSS could have avoided millions of dollars in disputed costs by promptly amending its regulation, even though it did not think it was necessary to do so in light of the state plan language.

30. In March 2015, the State Auditor released its audit report for SFY 2014, questioning $4,645,763 in federal funding (until the change in state regulation on March 30, 2014), for the same reason as the previous reports.

31. On January 14, 2016, CMS issued a second demand letter requesting that Missouri return the $4,645,763 in costs that the State Auditor questioned in the SFY 2014 report. CMS stated that the dispensing fee amount paid prior to March 30, 2014 exceeded the "applicable fee" because it was greater than the amount provided for in state regulation and in the 1991 Settlement Agreement.

32. On January 15, 2021, CMS disallowed a total of $23,977,840 in federal funds for dispensing fees DSS claimed in SFYs 2011, 2012, 2013, and 2014 on the grounds that they were not in accordance with the state plan.

33. On March 16, 2021, DSS timely appealed the disallowance to the HHS Departmental Appeals Board pursuant to 42 U.S.C. § 1316(e)(2).

### The Departmental Appeals Board Disallowance Decision

34. On September 15, 2025, the Board issued a decision sustaining the disallowance in full. *See Missouri Dep't of Soc. Servs.*, DAB No. 3209 (2025) (attached as Exhibit 1). The Board

declined to defer to DSS's interpretation that the "applicable fee" language in the state plan gave it the discretion to adjust the fee with state legislative approval. The Board found this interpretation was "not reasonable in light of program requirements" and "[d]id not give reasonable effect to the plan language as a whole." In so holding, the Board at times suggested that any change to the dispensing fee required a change to the state plan, and at times appeared to suggest that no amendment was necessary, because the "'applicable fee' for purposes of the state plan could be either a published regulation or an officially executed and approved settlement agreement." The Board gave no rationale for why those two options were the only two available for establishing the "applicable fee."

35. The Board also held that DSS was not prejudiced by CMS's delay in acting on the state audits until several years after it received the state audits for SFY 2011 and SFY 2012 questioning these costs, even though OMB Circular A-133 (and later 2 C.F.R. Part 200) required that CMS issue a management decision on the State Auditor's findings within six months.

36. No deference is owed to CMS or the Board's interpretation of the Medicaid statute, in light of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Instead "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority[.]" *Id*. at 412.

## COUNT I

**(Administrative Procedure Act: Violation of the Medicaid Statute and Regulations and Arbitrary and Capricious Agency Action)**

37. Paragraphs 1 through 36 above are incorporated herein by reference.

38. The Board's decision is a final agency action under Section 704 of the Administrative Procedure Act, and reviewable under Section 706.

39. The Board's decision to uphold the disallowance of FFP in the amount of $23,977,840 is arbitrary and capricious, an abuse of discretion, and contrary to law.

## COUNT II

**(Administrative Procedure Act: Violation of the Single Audit Act and Regulations and Arbitrary and Capricious Agency Action)**

40. Paragraphs 1 through 39 above are incorporated herein by reference.

41. The Board's refusal to recognize the prejudicial delay caused by CMS's failure to timely issue a management decision is arbitrary and capricious, an abuse of discretion, and contrary to law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff the Missouri Department of Social Services requests that this Court grant the following relief:

A. Set aside HHS Departmental Appeals Board Decision No. 3209 and the underlying disallowance upheld by that decision;

B. Permanently enjoin Defendants and their agents, employees, successors in office, and all persons acting in concert or participation with them, from disallowing the $23,977,840 at issue and charging interest for the non-payment of that disallowance from the time the disallowance was issued until Missouri returned the federal funds;

C. Award Missouri such declaratory and other relief as may be just and proper;

D. Award Missouri the costs of this action, including attorneys' fees; and

E. Retain jurisdiction over this action for such additional and supplemental relief as may be required to enforce the order and judgment.

November 13, 2025

Respectfully submitted,

/s/ Caroline M. Brown
Caroline M. Brown, No. 438342
Julia M. Siegenberg, No. 1671457
Brown & Peisch PLLC
1225 19th Street NW, Suite 700
Washington, DC 20001
(202) 499-4258
cbrown@brownandpeisch.com
jsiegenberg@brownandpeisch.com

*Attorneys for Missouri Department of Social Services*

10